UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ALLSTATE INSURANCE
COMPANY, a/s/o
Thadeusz Jastrzab Jr.

                    Plaintiff,

    v.                                                  5:99-CV-1261

JAMES E. FLEURY
NIAGARA MOHAWK POWER
CORPORATION,

                  Defendants,

JOHN CANINO
PLUMBING AND HEATING,

                  Third Party
                  Defendant,

_____

APPEARANCES:                                 OF COUNSEL:

COZEN, O'CONNOR LAW FIRM         JAMES P. CULLEN, ESQ.
For Plaintiff
1900 Market Street
3rd Floor, The Atrium
Philadelphia, PA 19103

COZEN, O'CONNOR LAW FIRM         MICHAEL J. SOMMI, ESQ.
For Plaintiff
New York City Office
45 Broadway Atrium
16th Floor
New York, NY, 10006

LAW OFFICE OF                              JOHN F. PFEIFER, ESQ.
LAURIE G. OGDEN, ESQ.
For Defendant, Cross Defendant
and Third Party Plaintiff
James F. Fleury
441 South Salina Street
The Galleries of Syracuse
4th Floor, Box 364
Syracuse, NY 13202-0364

| | |
|---|---|
| HISCOCK BARCLAY LAW FIRM<br>For Defendant and Cross Claimant<br>Niagara Mohawk Power Corporation<br>One Park Place<br>300 South Salina Street<br>Syracuse, NY 13202-2078 | ALAN R. PETERMAN, ESQ. |

JOHN CANINO PLUMBING & HEATING
John Canino *pro se*
Third Party Defendant

HOWARD G. MUNSON, SR. J.

_____

MEMORANDUM DECISION AND ORDER

This subrogation action was brought by Plaintiff Allstate Insurance Company, which insured property owned by Thaddeus Jastrzab, Jr. ("Jastrzab"). On August 23, 1996, a fire took place that caused substantial damage to the Jastrzab residence. Plaintiff sought to recover payments made to its insured for damages to his property from Niagara Mohawk Power Corporation, ("NIMO"), and James E. Fleury, ("Fleury"), the adjoining land owner. Plaintiff asserted that the defendants were responsible for the fire that damaged Jastrzab's residence.

The fire started at the Jastrzab home, which is located approximately 165 yards from Fleury's property. Both residences received electric power from a common transformer pole, owned by Defendant Niagara Mohawk. Electric power was provided to Fleury's residence through a 120 volt, two-wire service. He owned this two-wire service, and a meter pole that were located on his property. For many years, an apple tree on his land had grown near and into the two-wire electric service. The tree was never trimmed or prevented from touching the electric wires that

supplied his home's electricity.

Approximately ten days before the Jastrzab house fire, the growth of a very large apple crop on the tree partially uprooted it, and caused a limb to come in contact with his electric wires. Fleury asked Niagara Mohawk to correct the problem, but was informed that he owned the electric wires and was responsible for their upkeep. Even though Fleury expressed that he was concerned that the tree limb's touching the wires might cause a fire, no further action was taken, and the tree remained in contact with the wires.

On August 23, 1996, a fire extensively damaged the Jastrzab house. A post fire investigation found that the fire was caused by a phenomenon called an electrical "backfeed," that is defined as a potential of electric power that runs in the wrong direction. Here, the backfeed was caused by a limb of Fleury's apple tree contacting the transmission lines feeding electricity into his home. The backfeed took place when the apple tree limb touched on the old-style two-wire system forcing them into mutual contact. The contact caused a high resistance short circuit which supplied electrical power to both the Fleury and Jastrzab residences.

The apple tree limb induced contact between the Fleury wires grounded and energized the neutral line owned by Niagara Mohawk, this excess current caused a major electric load to pass through Niagara Mohawk's transformer and the electric lines supplying the Jastrzab home. Following its natural tendency toward a ground potential, the current also energized the grounding wire and rod at the Jastrzab residence. Although the grounding dissipated some of the excess current, there was still additional current/voltage on the Jastrzab ground. The undissipated electricity heated and energized the ground wire. In this energized state, the wire overheated and caused arching with the roof itself. The uncontradicted testimony of Plaintiff's expert witness,

William Patrick, was that it was clear that the backfeed originating from the Fleury property was the overall cause of the Jastrzab fire. He also testified, the fire was intensified by the fact that the Fleury home was not adequately grounded at the time. The correct grounding at the Fleury property could have helped to disburse the backfeed, and would have prevented the Jastrzab fire.

On June 18, 2001, this court held a bench trial on this matter. In a decision dated September 12, 2001, the court found that neither defendant was liable for the damages caused by the Jastrzab fire. Currently before the court is Plaintiff's reconsideration motion challenging a portion of the court's Decision and Order in this case.

The Plaintiff does not indicate whether its request for reconsideration is made pursuant to Rule 59 or Rule 60 of the Federal Rules of Civil Procedure. In many cases, the court determine which of these Rules a post-judgment motion was made under. A motion for reconsideration, as a practical matter, is a motion for amendment of judgment under Fed.R.Civ.P. 59(e), as it seeks to reopen a court's decision on the theory that the court made mistaken findings in the first instance. City of Hartford v. Chase, 942 F.2d 130, 133-34 (2d Cir.1991). Because of this fact, motions for reconsideration are treated as motions brought pursuant to Fed.R.Civ.P. 59(e) for purposes of measuring the timeliness of their filing. United States ex rel. McAllan v. City of New York, 248 F.3d 48, 52 (2d Cir.2001). The filing of a Rule 59(a) post-judgment motion must be filed within ten (10) days of entry of judgment. Birdsong v. Wrotenbery, 901 F.2d 1270, 1272 (5th Cir.1990). The Plaintiff has made a timely filing of its motion in the case at bar.

A Rule 59(e) motion suspends the finality of a judgment for purposes of appeal, and the full time for appeal commences to run anew from the entry of the order disposing of the motion. Fed.R.App.P. 4(a)(iv), Arnold v. Sullivan, 131 F.R.D. 129, 131 (N.D.Ind.1990).

Reconsideration of a court's previous order, however, is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Management Systems Inc. Secs. Litig., 113 F. Supp. 613, 614 (S.D.N.Y.2000).

A party bringing a reconsideration motion "must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion." Fulani v. Brady, 149 F.R.D. 501, 503 (S.D.N.Y.1993), aff'd *sub nom*. Fulani v. Bentsen, 35 F.3d 49 (2d Cir.1994).  A Rule 59(e) motion is not intended as a vehicle for a party dissatisfied with the court's ruling,  to advance new theories that the movant failed to advance in connection with the underlying proceeding, nor to secure a rehearing on the merits with regard to issues already decided. Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp.2d 365, 368 (S.D.N.Y.1999). The Rule is designed to "ensure the finality of decisions and to prevent the practice of a losing party [from] examining a decision and then plugging the gaps of a lost cause with additional matters. Carolco Pictures, Inc. v. Sirota, 700 F. Supp.169, 170 (S.D.N.Y.1988).  A Court must narrowly construe and strictly apply Rule 59(e), so as to avoid duplicative rulings on previously considered issues, and to prevent the rule from being used as a substitute for appealing a final judgment. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 150 (S.D.N.Y.1999).

Plaintiff asserts that the court inaccurately applied the law of negligence and foreseeability to the facts in this case. Plaintiff 's objection to the court's decision in this case is restricted to a request that the court "reconsider its proximate cause " finding as it relates to defendant Fleury. Plaintiff challenges the court's finding that the fire at the Jastrzab residence was not a reasonable consequence of  Fleury's failure to remove the apple tree limb from his power lines. Plaintiff further maintains that the "precise occurrence" did not have to be foreseeable in order

for liability be imposed on Fleury, and that he would have been liable if the fire started at his house, therefore, liability should be imposed for the fire that started 165 yards away.

Negligence is conduct which falls below the standard established by law for the protection of people against unreasonable risk. Cygan v. City of New York, 165 A.D.2d 58, 67, 566 N.Y.S.2d 232, 238 (1st Dep't 1991). In order to establish a *prima facie* case of negligence, a plaintiff must demonstrate (1) the existence of a duty on defendant's part as to plaintiff, (2) a breach of this duty, and (3) an injury to the plaintiff as a result thereof. Akins v. Glens Falls City School District, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 648, 424 N.E.2d 531, 535 (1981); Gaeta v. City of New York, 624 N.Y.S.2d 47, 48 (2d Dep't 1995).

In this case, the focus of the inquiry is on the foreseeability of the risk. This is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated. Further, although virtually every untoward consequence can theoretically be foreseen "with the wisdom born of the event." Greene v. Sibley, Lindsay & Curr Co., 257 N.Y. 190, 192, 177 N.E. 416), the law draws a line between remote possibilities, and those that are reasonably foreseeable because "[n]o person can be expected to guard against harm from events which are . . . so unlikely to occur that the risk . . . would commonly be disregarded" Danielenko v. Kinney Rent A Car, *supra.* Although the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent. Di Ponzio v. Riordan, 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616 (1997).

Plaintiff's reliance on Derdiarian v. Felix Contracting Corp. 51 N.Y.2d 308, 315, 434

6

N.Y.S.2d 166 (1980), and Homac Corporation v. Sun Oil Company, 258 N.Y. 462 (1932)in support of its position is misplaced. In Derdiarian, the defendant general contractor owed a duty to the plaintiff, an employee of a subcontractor, to provide a safe place to work. In light of that recognized legal relationship between those two parties, the Court of Appeals held that it was for the fact finder to determine whether the general contractor's failure to safeguard the excavation site against the entry of a vehicle into the roadway portion of the work site was a proximate cause of the plaintiff's injuries. Derdiarian, at 312; 312-316, 434 N.Y.S.2d 166.

In the Homac Corporation case, the defendant Sun Oil Company ("Sun Oil") was a distributor of gasoline, and maintained a plant for its storage on its property. Storage tanks designed to hold large quantities of fuel had also been erected on the site. One evening the gasoline in one of the storage tanks exploded, and started a chain reaction which caused other tanks to also explode. The fire, then was "communicated directly to the Plaintiff's premises," and, as it spread across to the property, destroyed many buildings thereon.

A comparison of the facts in Homac with those in the instant case, shows that there are essential differences in the events which took place in each one. No fire took place on the Fleury property, he owned a home in the country, as opposed to Sun Oil's operating an urban business of selling and storing vast amounts of an unpredictable and highly volatile gasoline in a large tank farm area, the Fleury and Jastrzab properties were approximately 165 yards apart, while the properties in Sun Oil were only 77 feet from each other, and the fire spread directly from one to the other in a readily foreseeable manner from combustible sources. These determining components in Homac certainly presented a clearly foreseeable liability exposure to Sun Oil. However, none of these components were found in the instant case, nor was any foreseeable liability exposure

7

established.

A risk is foreseeable only when it could reasonably be anticipated.  Di Ponzio v. Riordan, 89 N.Y.2d 578, 657 N.Y.S.2d 377, 679 N.E.2d 616; Danielenko v. Kinney Rent A Car, 57 N.Y.2d 198, 455 N.Y.S.2d 555, 441 N.E.2d 1973).  This is because the law draws a line between remote possibilities and those that are reasonably foreseeable because [n]o person can be expected to guard against harm from events which are ... so unlikely to occur that the risk ... would commonly be disregarded  Di Ponzio v. Riordan, *supra* at 583, 657 N.Y.S.2d 377, 679 N.E.2d 616.  Here, the probability that Defendant Fleury could have foreseen that the tree limb touching his power lines might create an electric backfeed fire that damaged the Jastrzab residence, was too tenuous and remote to permit recovery under a negligence cause of action.

Accordingly,

Plaintiff's reconsideration motion is **DENIED.**

**IT IS SO ORDERED**

Dated: April 20,  2007
       Syracuse, New York

_____
Howard G. Munson
Senior  U.S. District Judge